# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No: 09-CV-00528-PAB-BNB

DATAWORKS, LLC,
a Colorado limited liability company,

    Plaintiff,

v.

COMMLOG LLC,
an Arizona limited liability company,

    Defendants.

## FIRST AMENDED COMPLAINT

Plaintiff Dataworks, LLC ("Dataworks"), by its attorneys, Benjamin, Bain & Howard LLC, submits its First Amended Complaint and alleges as follows:

### NATURE OF ACTION

1. This is an action for copyright infringement, trademark infringement and other relief, arising out of Defendant's deliberate, willful and unauthorized use of Plaintiff's intellectual property.

2. Plaintiff's copyright infringement claim arises out of Defendant's deliberate, willful, and unauthorized copying, publication, dissemination, distribution and exploitation of Plaintiff's copyrighted works.

3. Plaintiff's trademark infringement claims arise out of Defendant's improper use of Plaintiff's federally registered trademark "Dataworks®" and "The Managers Red Book®"

(collectively, the "Registered Trademarks") as "metatags" or keyword in Defendant's source code on Defendant's website "commlog.com" and also as keywords in Defendant's Google "sponsored link," which uses were designed to direct internet traffic to Defendant's website when potential customer's of Plaintiff searched the Internet.

4. In or about June 2007, through a search of the Internet and review of Defendant's source code for its website, Plaintiff learned that Defendant was using Plaintiff's Registered Trademarks as metatags on Defendant's website.

5. At the written request of Plaintiff, Defendant ceased using Plaintiff's Registered Trademarks in Defendant's source code for its website in July 2007.

6. In or about November 2008, Plaintiff learned through a search of the Internet that Defendant was again using Plaintiff's Registered Trademarks to direct Internet traffic to Defendant's website. This time Defendant was using the Registered Trademarks in Defendant's Google sponsored link for the purpose of directing traffic to Defendant's website.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's federal trademark infringement claim pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338 because it arises under the Lanham Act, 15 U.S.C. § 1125.

8. This Court has jurisdiction over Plaintiff's federal copyright claims pursuant to Title 17 of the United States code and 28 U.S.C. § 1338.

9. This Court has supplemental jurisdiction over Plaintiff's claims under Colorado statutory and common law pursuant to 28 U.S.C. § 1367(a) because the Colorado claims are part of the same case or controversy as Plaintiff's Lanham Act claim.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and (c).

## PARTIES

11. Dataworks, LLC ("Dataworks") is a Colorado limited liability company with its principal place of business at 4550 S. Windermere Street, Englewood, Colorado 80110.

12. Commlog, LLC ("Commlog") is an Arizona limited liability company with its principal place of business at 2509 E. Darrel Rd., Phoenix, AZ 85042.

## GENERAL ALLEGATIONS

13. Dataworks creates custom publishing services for others for log books, desktop planners, reservation books, and time management books for the restaurant industry as well as other businesses. Dataworks also provides integrated, industry-specific management, training, and operational tools and services.

14. On its website, www.commlog.com, Commlog describes itself as publisher of manager's log books and more for restaurants, hotels, retail and hospitality.

15. The mark "Dataworks®" is a federally registered trademark of Dataworks. This trademark was filed for registration on September 14, 1995, and was registered July 22, 1997, at

Registration No. 2080678.  The description of goods and services set forth in the registration is as follows: "custom publishing services for others for log books, desktop planners, reservation books, and time management books for the restaurant industry as well as other businesses." Dataworks began using this mark in commerce on or about March 18, 1989, as alleged in Dataworks' registration application.  Dataworks' registration for the mark "Dataworks®" was renewed for ten years on March 2, 2007, pursuant to 15 U.S.C.A. § 1058.

16.  The mark "The Manager's Red Book®" is a federally registered trademark of Dataworks.  This trademark was filed for registration on November 10, 2004, and was registered June 6, 2006, at Registration No. 3100193.  The description of goods and services set forth in the registration is as follows:  "Log books, desktop planners, personal planners, wait-list note pads, log books for keeping track of tips to be shared, trainer's log books, employee history log books, car rental log books, call-ahead seating log books, deposit lot books, reservation books, tri-fold cards for recording information and note-keeping, and time management books for the restaurant industry as well as other businesses."Dataworks began using this mark in commerce on or about August 27, 2004, as alleged in Dataworks' registration application.

17.  Dataworks advertises using the Registered Trademarks on the Internet, in print media and other sources, and uses the Registered Trademarks on its website www.redbooksolutions.biz and in its metatags for its website to direct traffic to its website.

18.  Dataworks sells its products and services via the Internet through its website www.redbooksolutions.biz.

4

19. Through Dataworks' use and marketing of the Registered Trademarks, they have come to identify Dataworks' goods and services.

20. Upon information and belief, for the purpose of improperly directing Internet users to its website, Commlog placed Dataworks' Registered Trademarks in its source code for its website "Commlog.com." By using Dataworks' Registered Trademarks in this manner, Commlog directed customers searching for Dataworks and its website to Commlog and its competing products on Commlog's website.

21. Following Dataworks' discovery of Commlog's use of Registered Trademarks as a metatag on Commlog's website, in June 2007, Dataworks, by its attorneys, notified Commlog of its infringement of Dataworks' trademark rights and requested that Commlog cease and desist using Dataworks' marks in violation of Dataworks' rights. Commlog acknowledged the infringing use and agreed to remove the Registered Trademarks from its website.

22. Following Dataworks' discovery of Commlog's use of the Registered Trademarks in its Google sponsored link, Dataworks, by its attorneys, notified Commlog of its infringement of Dataworks' trademark rights and requested that Commlog cease and desist using Dataworks' marks in violation of Dataworks' rights. Dataworks acknowledged the infringing use and agreed to remove the Registered Trademarks from its website..

23.     Dataworks has created an array of copyrighted publications, including "universal" works that it sells to various customers. Plaintiff also creates various publications designed for sale to and use by particular customers.

24.     Dataworks has published, marketed, and sold the copyrighted unique literary work, entitled "The Manager's Red Book®" since 1996. This literary work is a management guide and journal for implementing and tracking shift changes, which is designed principally for the retail and restaurant industries. The "Manager's Red Book®" is registered with the United States Copyright Office at registration number TX006894618. Additionally, other versions of it have received registration number TX6-932-193 (quarterly, legal size).

25.     Dataworks has published, marketed and sold the unique literary work entitled "Shift Change" since 1991. "Shift Change" is designed to facilitate the exchange of workers' shifts in an orderly, organized and authorized way. It is registered with the United States Copyright Office at registration number TX7-001-768.

26.     Dataworks has published, marketed and sold the unique literary work entitled "Requested Days Off" since 2002. "Requested Days Off" is designed to facilitate vacation and other scheduled days off in an organized and authorized manner and is registered with the United States Copyright Office at registration numbers TX6-932-197, TX7-025-540, TX7-030-810, TX7-001-768.

27. Dataworks has published, marketed and sold the unique literary work entitled "Kitchen Red Book" since 1991. "Kitchen Red Book" is registered with the United States Copyright Office at registration number TX7-008-756.

28. Dataworks has published, marketed and sold the unique literary work entitled "The Trainer's Log Book" since 2007. This literary work is designed to improve the effectiveness of training programs by assisting restaurant managers and trainers document training sessions, set training goal and address problem areas through calendars, log sheets and meting notes. "The Trainer's Log Book" is registered with the United States Copyright Office at registration number TX0006894609. Additionally, the Copyright Office also issued registration number TX7-003-867 for another versions of it.

29. Dataworks has published, marketed and sold since 2002 the unique literary work entitled "Daily Inspector" which is designed to educate and insure food safety for the restaurant industry. "Daily Inspector" is registered with the United States Copyright Office at registration number TX7-029-369.

30. Dataworks has published, marketed and sold the unique literary work entitled "Pocket Rocket" since 2000. This literary work is designed to allow managers to document issues while working the floor. "Pocket Rocket" is registered with the United States Copyright Office at registration number TX6-995-303.

31. Dataworks has published, marketed and sold the unique literary work entitled "Guest Services Red Book" since 2002. This literary work is designed to assist hotel front desk personnel and to facilitate guest services. "Guest Services Red book" is registered with the United States Copyright Office at registration number TX6-932-189.

32. Dataworks has published, marketed and sold the unique literary work entitled "Guest Relations Book" since 2002. This literary work is designed to facilitate guest services. "Guest Relations Book" is registered with the United States Copyright Office at registration number TX7-008-745.

33. Dataworks has published, marketed and sold the unique literary work entitled "Managers Red Book FSR" since 1991. This literary work was modified to be used in full service restaurants. "Managers Red Book FSR" is registered with the United States Copyright Office at registration number TX6-932-193

34. Dataworks has published, marketed and sold the unique literary work entitled "Banquet Catering" since 1991. This literary work is designed to facilitate banquet and catering services. "Banquet Catering" is registered with the United States Copyright Office at registration number TX7-025-966.

35. Dataworks has published, marketed and sold the unique literary work entitled "Reservations" since 1991 to facilitate and organize reservation activities. These publications are

registered with the United States Copyright Office at registration numbers TX7-029-906, TX7-030-199, TX7-030-727.

36. In addition to its universal publications Dataworks has modified those and other universal products to address the needs and requirements of particular customers. Dataworks sells these derivative works to an array of customers including, without limitation, Black Eyed Pea and the Whiskey Creek stores.

37. Dataworks has also obtained copyright protection for some derivative works including, without limitation, Managers Red Book – Buffalo Wild Wings with copyright numbers TX7-029-956 and TX7-022-980.

38. The above Dataworks publications are referred to as ("Copyrighted Works"). Dataworks sells the Copyrighted Works book through various outlets nationwide, including direct sales to customers and sales through the Internet.

39. Dataworks has at all times included a copyright notice on these Copyrighted Works.

40. In 2008, Dataworks learned that Commlog was selling its Infringing Works, which contain materials virtually identical to Dataworks' Copyrighted Works.

41. Commlog has obtained both these universal and customized publications. Commlog then made minor changes to these copyrighted works before selling them attempting to evade liability for copyright infringement. Commlog produced and sold substantially similar

9

works with the same or similar names ("Infringing Works"). Commlog's publications remain substantially similar to the Copyrighted Works.

42. Commlog apparently obtained Dataworks' Copyrighted Works from former Dataworks' customers, including, without limitation, BEP Colorado Restaurants, LLC, and RAI Holdings, LLC. Commlog evidently obtained other Copyrighted Works from other sources. Since Commlog did not need to invest the time and effort to create those works, Commlog marketed to and sought to persuade Dataworks' customers to purchase Commlog's substantially identical publications at lower prices.

43. After copying Dataworks' publications and making minor changes to them in an apparent attempt to evade copyright infringement, Commlog sold these publications to numerous customers. On information and belief, Commlog sold Infringing Works to Dataworks' former customers, including without limitation, Black Eyed Pea, Brunswick Corporation, TGI Friday's, Whiskey Creek, Ruby Tuesday, Gilligan's Bar and Grill, Taco Cabana, Buffalo's Franchise Concepts, Rockfish Seafood Grill, Franklin Restaurant, Minerva's, Old Chicago, Colonial Cafe, Buffalo Wild Wings and Little Cesar's store and restaurants.

44. On information and belief, Commlog sold Infringing Works to additional customers, which will be identified during discovery.

45. In or about November 2008, Plaintiff learned of Defendant's infringing activities when it received a copy of the Infringing Works from a customer of Plaintiff.

46. The Infringing Works contain materials that are substantially similar to the Copyrighted Works.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement)

47. Dataworks incorporates paragraphs 1 through 47 above as if set forth herein.

48. Dataworks' marks "Dataworks®" and "The Manager's Red Book®" are valid and protectable marks within the meaning of the Lanham Act, 15 U.S.C.A § 1125(a)

49. Commlog used the metatag or keyword "dataworks" and "manager's red book" in commerce on Commlog's website to direct Internet traffic to Commlog's website for the purposes of advertising Commlog's products and for the purpose of gaining a competitive advantage over Dataworks.

50. Commlog used "dataworks" and/or "manager's red book" as a keyword in Commlog's Google sponsored link to direct internet traffic to Commlog's website for purposes of advertising its products and for purposes of gaining a competitive advantage over Dataworks.

51. Commlog's use of "dataworks" and "manager's red book" are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Commlog with Dataworks as to the origin, sponsorship, or approval of Commlog's goods, services, or commercial activities by Dataworks as prohibited by the Lanham Act, 15 U.S.C.A § 1125(a).

52. Dataworks has been damaged by Commlog's violation of the Lanham Act 15 U.S.C.A § 1125(a)

53. Dataworks is entitled to treble its actual damages pursuant to 15 U.S.C. § 1117(a) and (b).

54. Dataworks is entitled to recovery of its attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a).

55. In addition to monetary damages, Dataworks is entitled to a preliminary and a permanent injunction enjoining the Commlog from using a name, keyword, or metatag on its website that is confusingly similar to Dataworks' trademark, including any name incorporating the words "dataworks" or "manager's red book."

### SECOND CLAIM FOR RELIEF
### (Copyright Infringement)

56. Dataworks incorporates paragraphs 1 through 56 above as if fully set forth herein.

57. Dataworks' Copyrighted Works and derivatives thereof are covered by its copyright registration and construe copyrightable subject matter.

58. Dataworks has complied with the provisions of the copyright laws of the United States, 17 U.S.C. §101, et seq., and has secured its rights and privileges in Copyrighted Works and derivatives thereof and has sought and obtained a Certificates of Registration from the Register of Copyrights, the United States Copyright Office.

12

59. The exclusive rights granted to a copyright owner under 17 U.S.C. §106 include:

   (a) the right to reproduce the copyrighted work in copies;

   (b) the right to prepare derivative works on the copyrighted work; and

   (c) the right to distribute copies of the copyrighted work to the public.

60. Pursuant to 17 U.S.C. §501, an infringer is one who violates the exclusive right of the copyright owner as provided by 17 U.S.C. §§106 through 122.

61. After Commlog gained access to Dataworks' Copyrighted Works, Commlog made minor modifications to Dataworks' Copyrighted Works to evade liability for copyright infringement. Commlog then sold Infringing Works that were substantially similar to Dataworks' Copyrighted Works or derivatives thereof within the United States, all without the authorization of Dataworks and in violation of Dataworks' rights under the copyright law of the United States.

62. Commlog's acts have been willful, deliberate, and have continued despite Dataworks' notice of copyright infringement, all to the profit of Commlog and to the damage and injury of Dataworks. Such damage and injury is irreparable and will continue unless the Court enjoins such infringement. Commlog's wrongful acts have caused Dataworks substantial monetary damage in amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(Unfair Competition Under Colorado Common Law)**

63. Dataworks incorporates paragraphs 1 through 63 above as if fully set forth herein.

64. Commlog has copied Dataworks' publications with minor changes to pass them off as substantially the same publications.

65. Commlog's actions are designed to, and/or likely to create confusion, mistakes or deception by customers and/or potential customers.

66. Dataworks' marks "Dataworks®" and "The Manager's Red Book®" have acquired secondary meanings.

67. Commlog's use of the metatag or keyword "dataworks" and/or "manager's red book" in commerce on its website to direct Internet traffic to Commlog's website is unfair to Dataworks and the public is likely to be deceived by such use.

68. Commlog's use of the words "dataworks" and/or "manager's red book" as keywords in its Google "sponsored link" is unfair to Dataworks and the public is likely to be deceived.

69. Dataworks has been damaged by Commlog's unfair use of "dataworks" and "manager's red book" as a keyword on its website and as keywords in its Google sponsored link.

70. In addition to monetary damages, Dataworks is entitled to a preliminary and a permanent injunction enjoining Commlog from using a name that is confusingly similar to

14

Dataworks' trademarks, Dataworks® and "The Manager's Red Book®" including any name, keyword, or embedded data on its website incorporating the word "dataworks" or "manager's red book."

## FOURTH CLAIM FOR RELIEF
### (Colorado Consumer Protection Act, C.R.S. § 6-1-101, *Et Seq.*)

71. Dataworks incorporates paragraphs 1 through 71 above as if fully set forth herein.

72. Commlog engaged in a deceptive trade practice by, among other things,

    (a) knowingly passing off its goods and services as those of Dataworks in violation of C.R.S. § 6-1-105(1)(a);

    (b) knowingly making a false representation as to the source, sponsorship, approval or certification of its goods in violation of § 105(1)(b);

    (c) knowingly making a false representation as to its affiliation, connection or association with Dataworks in violation of § 105(1)(c); and

    (d) knowingly making a false representation as to the sponsorship, approval, status, affiliation or connection of Dataworks with Commlog in violation of § 105(1)(e).

73. Commlog's deceptive trade practices include selling Dataworks' publications and using its intellectual property and passing these publications off as from Dataworks, making false

representations about their ability to sell Dataworks' products and/or making false representations concerning its affiliation with Dataworks.

74. Dataworks has published, marketed and sold other unique literary works and derivative works including, without limitation, "Sales Companion", "Managers Red Book – Retail", and "Bar Book." Although Dataworks has not yet received a copyright for these publications, it uniformly puts the copyright symbol on them.

75. Commlog engaged in these deceptive trade practices in the course of the Commlog's business.

76. Commlog's deceptive trade practices significantly impacted the public as actual or potential consumers of the Commlog's goods or services.

77. Dataworks was damaged in the course of its business as a result of the Commlog's deceptive trade practices.

78. Commlog's deceptive trade practices caused actual damages or losses to Dataworks.

79. Commlog's deceptive trade practices were undertaken in bad faith, thereby entitling Dataworks to treble its actual damages.

80. Dataworks is entitled to recovery of its attorneys' fees and costs pursuant to C.R.S. § 6-1-113(2)(b).

## FIFTH CLAIM FOR RELIEF
**(Injunctive Relief)**

81. Dataworks incorporates paragraphs 1 through 81 above as if fully set forth herein.

82. There is a substantial likelihood that Dataworks will prevail on one or more of its four Claims.

83. Dataworks will suffer irreparable injury unless a preliminary injunction issues.

84. The threatened injury to Dataworks outweighs whatever damage a preliminary injunction would cause Commlog.

85. A preliminary injunction would not be adverse to the public interest.

86. Dataworks will suffer irreparable harm before a trial on the merits can be held.

87. The Court should enter a preliminary injunction enjoining Commlog from using a name that is confusingly similar to Dataworks' trademarks "Dataworks®" and "The Manager's Red Book®" including any name, keyword, or embedded data on its website incorporating the word "dataworks" or "manager's red book" until the Court can hear the merits of Dataworks' case.

88. The Court should enter a permanent injunction enjoining Commlog from using a name, keyword, or metatag on its website that is confusingly similar to Dataworks' trademarks,

"Dataworks®" and "The Manager's Red Book®" including any name, keyword, or metatag incorporating the word "dataworks," or "manager's red book."

89.  The Court should also enter preliminary and permanent injunction enjoining Commlog from copying Dataworks' Copyrighted Works and any derivative works.

**WHEREFORE,** Dataworks requests that the Court award it the following relief:

A.  Dataworks' actual damages, including Commlog's profits and Dataworks' damages pursuant to 15 U.S.C. § 1117(a), Colorado common law and C.R.S. § 6-1-113;

B.  Treble Dataworks' damages pursuant to 15 U.S.C. § 1117(a) and (b), and C.R.S. § 6-1-113;

C.  A just amount if the Court determines Dataworks' actual damages are not just pursuant to 15 U.S.C. § 1117(a);

D.  Dataworks' attorneys fees pursuant to 15 U.S.C. § 1117(a) and C.R.S. § 6-1-113;

E.  A preliminary injunction pursuant to 15 U.S.C. § 1116(a) prohibiting Commlog from using any name, keyword, or metatag that is confusingly similar to Dataworks' trademark, "Dataworks®," including any name, keyword, or embedded data on its website incorporating the word "dataworks;"

F. A permanent injunction pursuant to 15 U.S.C. § 1116(a) prohibiting Commlog from using any name, keyword, or metatag that is confusingly similar to Dataworks' trademark, "Dataworks®," including any name, keyword, or metatag incorporating the word "dataworks;"

G. Commlog, their officers, employees and agents, and all other persons acting in active concert of participation with them, be preliminarily, and then permanently enjoined from further infringement of Dataworks' copyrights;

H. Commlog pay Dataworks the greater of Dataworks' actual damages, Commlog's profits, or statutory damages as provided by 17 U.S.C. § 504;

I. Any monetary award be increased as willful acts; and

J. Any other relief the Court deems just and proper.

Respectfully submitted this 12th day of February, 2010.

BENJAMIN, BAIN & HOWARD, LLC


/s James W. Bain
James W. Bain
7315 East Orchard Road, Suite E400
Greenwood Village, CO  80111
Phone: 303-290-6600
Fax: 303-290-8323
E-mail: jamesbain@bbhlegal.com
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2010, the foregoing **FIRST AMENDED COMPLAINT** was electronically served and efiled via CM-ECF system to the following:

J. Mark Smith, Esq.
Email: msmith@penberg.com

Meribeth Wheatley
mwheatley@penberg.com


/s /  *Barbara A. Adams*
Barbara A. Adams for James W. Bain
Attorney for Plaintiff
Benjamin, Bain & Howard, LLC
7315 East Orchard Road, Suite E400
Greenwood Village, CO  80111
Phone: 303-290-6600
Fax: 303-290-8323
E-mail: jamesbain@bbhlegal.com