**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No: 09-CV-00528-WJM-BNB

DATAWORKS, LLC, a Colorado limited liability company,

    Plaintiff,

v.

COMMLOG, LLC, an Arizona limited liability company, and
STEVEN STREIFF,

    Defendants.

---

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants Commlog, LLC and Steven Streiff's Motion for Partial Summary Judgment. (ECF No. 91; *see also* ECF Nos. 144, 145.) The motion is fully briefed and ripe for disposition. (*See also* ECF Nos. 110, 114.) Also pending is Plaintiff Dataworks' Unopposed Motion for Leave to File Sur-Reply. (ECF No. 146.) The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. For the following reasons, Defendants' Motion for Partial Summary Judgment is DENIED, and Dataworks' Unopposed Motion for Leave to File Sur-Reply is DENIED as MOOT.

## I. BACKGROUND

Defendants' Motion for Partial Summary Judgment ("MPSJ") pertains only to Dataworks' copyright infringement claim and the portion of its injunctive relief claim

pertaining to alleged copyright infringement.[1]  The copyright infringement claim involves two documents:  the "Manager's Red Book (BEP)" and "Trainer's Log (BEP)."[2]

### A.     Factual Background

The following facts are not in dispute.

Managers' log books are used in the restaurant industry, among others, to record operational information.  Dataworks and Commlog both create such log books for restaurants, and are direct competitors in the log book business.  Streiff is Commlog's owner.  The Court will refer in this Order to both Defendants collectively as "Commlog."

At some point prior to 2006, the Black-eyed Pea restaurant chain ("BEP") began purchasing log books from Dataworks, buying Dataworks' universal, non-customized log books.  Starting in 2006, JB Bettinger, among other employees at BEP, began working with Dataworks to customize the log books sold by Dataworks to BEP.  Through that customization process, the works at issue were created, namely, the third quarter 2008 versions of the "Manager's Red Book (BEP)" and "Trainer's Log (BEP)" (collectively, "the Custom Logs").  Dataworks currently holds copyright registrations in works entitled

---

[1] The MPSJ also seeks dismissal of Dataworks's common law and state law claims (*see* ECF No. 91, at 17-20), but Dataworks voluntarily dismissed those claims on April 21, 2011 (*see* ECF No. 132, 133).  Thus, that issue is moot.
   The operative complaint also contains a trademark infringement claim that is not at issue in the MPSJ.  (*See* ECF No. 92, at 11-13.)

[2] Although the operative complaint discusses many other alleged instances of copyright infringement as to other works (*see* ECF No. 92, at 6-11, 13-14), the Amended Final Pretrial Order clarifies that Dataworks has limited its copyright infringement claim to alleged infringement related only to the "Manager's Red Book (BEP)" and "Trainer's Log (BEP)" (*see* ECF No. 135, at 2; ECF No. 137, at 2-3).  Counsel for Dataworks confirmed this at the oral argument on the MPSJ.  (*See* Unofficial Transcript of July 8, 2011 Oral Argument on the MPSJ ("Hearing Transcript"), at 3:14-19.)

"The Manager's Red Book Third Quarter 2008 Black-eyed Pea" and "The Trainer's Log Book Third Quarter 2008 (Black-eyed Pea)." (*See* ECF No. 91, Exs. A-11, A-12.) It appears that these documents were registered with the Copyright Office as compilations. (*See id.*)

BEP subsequently stopped working with Dataworks, and hired Commlog to create the equivalent customized logs for BEP for the fourth quarter 2008. BEP gave Commlog copies of the Custom Logs and directed Commlog to produce similar logs. (ECF No. 91, at 6 ¶ 25; ECF No. 110, at 12 ¶ 25.) Commlog did so and sold them to BEP. (*Id.*) Commlog's use of the Custom Logs to create similar logs for BEP is what forms the basis for Dataworks' copyright infringement claim against Commlog.

**B.     Procedural Background**

Dataworks originally filed this action on March 11, 2009 (ECF No. 1), and filed the operative Second Amended Complaint on September 20, 2010 (ECF No. 92). BEP has not intervened or been joined as a party to this action. On September 21, 2010, Commlog filed the MPSJ. (ECF No. 91.)[3] Dataworks filed a Response (ECF No. 110), and Commlog filed a Reply (ECF No. 114).

In the MPSJ, Commlog argues that (1) because BEP authorized it to reproduce the Custom Logs, and because BEP is at least a joint author (if not the sole author) of the Custom Logs, Commlog is immune from copyright liability to Dataworks; (2) Dataworks' contributions to the Custom Logs are not copyrightable; and (3) Dataworks' copyright registrations for the Custom Logs are invalid and should be cancelled. (ECF

---

[3] The MPSJ was originally filed only on behalf of Defendant Commlog (*see* ECF No. 91), but Defendant Streiff has since joined as a co-movant (ECF No. 144, 145).

3

91, at 10-17.)

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also* Fed. R. Civ. P. 56(e). *See also Adler*, 144 F.3d at 671 (stating that the nonmovant must come forward with evidence "that would be admissible . . . in the event of trial from which a rational

trier of fact could find for the nonmovant").

### III.  ANALYSIS

**A.     Ownership of the Custom Logs**

The primary issue raised by the briefing on the MPSJ is who owns the Custom Logs.  If Dataworks owns the Custom Logs (as Dataworks argues), BEP could not have authorized Commlog to use the Custom Logs to create reproductions.  If BEP owns the Custom Logs (as Commlog argues), BEP obviously could have authorized Commlog to create reproductions.  Also, if BEP and Dataworks are co-owners (joint authors) of the Custom Logs (as Commlog alternatively argues), then BEP could have authorized Commlog's use of the Custom Logs and Commlog would be immune from copyright liability to the other co-owner, Dataworks.  *See, e.g.*, *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007) ("A license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement.").

As an initial matter, it should be noted that this is not a traditional dispute between two alleged co-owners of a copyrightable work.  Instead, BEP, not being a party to this lawsuit, has not taken a position regarding the extent of its ownership interest, if any, in the Custom Logs.  Instead, it is Commlog, as a licensee of BEP, that is arguing that BEP has an ownership interest in the Custom Logs.  The law is not settled regarding whether a third party non-author such as Commlog can challenge the validity of an alleged owner's copyright.  *Compare Int'l Code Council, Inc. v. Nat'l Fire Prot. Ass'n, Inc.*, No. 02 C 5610, 2006 WL 850879, at *18 n.33 (N.D. Ill. Mar. 27, 2006) (citing case law holding that a non-author does have standing to challenge a copyright

holder's right to enforce the copyright), *with Homeowner Options for Mass. Elders, Inc. v. Brookline Bancorp, Inc.*, No. 09-11790, 2011 WL 1832515, at *2 (D. Mass. May 12, 2011) (rejecting attempt by non-author to challenge the validity of copyright where no actual potential authors of the work had disputed the copyright holder's ownership).[4]

Even assuming that Commlog has standing to challenge the validity of Dataworks' copyrights, there is a triable issue as to whether Dataworks owns the Custom Logs, BEP owns the Custom Logs, or the Custom Logs are jointly owned by Dataworks and BEP.  As another threshold issue, it is important to note that there is no indication in the record that Dataworks and BEP ever entered into a contract that included a provision governing who owned the Custom Logs.  (*See* Hearing Transcript, at 5:25 - 6:8, 9:21 - 10:5.)  *See Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) ("A contract evidencing intent to be or not to be coauthors is dispositive.").  Therefore, the Court must look to other evidence potentially indicating ownership of the Custom Logs.

Yet a third threshold issue is based on the fact that Dataworks holds copyrights in these third quarter 2008 versions of the Custom Logs.[5]  Given this, a presumption exists that it owns the Custom Logs and Commlog has the burden to show that the

---

[4] Case law has more consistently held that a third party does not have standing to challenge the validity of an *assignment* of a copyright, *see, e.g.*, *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003); *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir.1995), but one court has specifically distinguished that factual scenario from the situation present here, namely, a third party challenging a copyright holder's right of ownership, *see In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1097 (N.D. Cal. 2002).

[5] The Court addresses *infra* Commlog's argument that it is not clear what versions of the Custom Logs are actually copyrighted.

copyrights are invalid, *i.e.*, that BEP was at least a co-owner of the Custom Logs. *See Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1993).

The circumstances of this case underscore Commlog's burden, because here, the Custom Logs were created based on universal logs that Dataworks originally sold to BEP and that were indisputably owned by Dataworks. Thus, under these circumstances, it must be shown that the customizations made to the universal logs were significant enough to lessen Dataworks' sole ownership of the logs. There are genuine factual disputes regarding the extent to which the customizations of the universal logs were authored by BEP, or Dataworks, or both. (*See, e.g.*, ECF No. 91, at 5-6 ¶¶ 17-21; ECF No. 110, at 9-11 ¶¶ 17-21.) It certainly appears that BEP and Bettinger provided at least some of the content added to the Custom Logs, but that fact is not dispositive regarding ownership. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1069 (7th Cir. 1994) ("Focusing solely upon the fact of contemporaneous input by several parties does not satisfy the statutory requirement that the parties intend to merge their contributions into a unified work.").

Instead, the crucial question is what Dataworks' and BEP's intent was regarding who would own the Custom Logs. For the Custom Logs to be joint works, Dataworks and BEP must have had, at the time of creation, the mutual intent that they would be co-owners of the Custom Logs. *See* 17 U.S.C. §§ 101, 201(a); *Erickson v. Trinity Theatre*, 13 F.3d 1061, 1067-69 (7th Cir. 1994). If only one party had that intent, a joint work was not created. *Childress v. Taylor*, 945 F.2d 500, 508-09 (2d Cir. 1991). Viewing the evidence in a light most favorable to Dataworks, there are genuine disputes of material fact as to Dataworks' and BEP's intent regarding who owned the Custom Logs. On the

one hand, Commlog emphasizes Bettinger's testimony that the customizations were owned by BEP,[6] and testimony of Dataworks employees that BEP had control over changes to the Custom Logs.[7] On the other hand, the fact remains that the Custom Logs grew out of universal logs owned solely by Dataworks. There is insufficient evidence here showing that the intent of the parties changed regarding the ownership of the universal logs as the logs were changed into the Custom Logs at issue. Also, the Custom Logs were still works that Dataworks was *selling* to BEP, and so although BEP indisputably purchased *copies* of the Custom Logs, genuine disputes of fact remain about who owned the copyrightable material itself.[8]

---

[6] While Commlog may have standing to assert BEP's ownership of the Custom Logs, that does not mean Bettinger's testimony is as persuasive as the testimony might have been had it been provided by BEP itself. BEP is not a party to this action, and Bettinger's deposition testimony and affidavit were not made in a representative capacity on behalf of BEP. Instead, Bettinger is simply a former employee of BEP who has been willing to provide her own testimony in the case.

[7] Commlog focuses in large part on the level of control that BEP had over the creation of the Custom Logs. But it is not surprising that Dataworks was willing to make whatever additions or changes requested by BEP, a customer of Dataworks that was providing Dataworks with business. That makes this case different than the more traditional case where two alleged co-authors fighting over ownership are not in a seller-customer relationship. While level of control is still a relevant factor, the crucial issue, as demonstrated by the relevant statute, is the parties' intent. *See* 17 U.S.C. §§ 101, 201(a).
    It should also be noted that Commlog has not argued that BEP owns the works based on the "work for hire" doctrine (which holds that an employer or another entity who hires someone else to create a work owns that work). *See* 17 U.S.C. §§ 101 (defining a "work made for hire"), 201(b). It is clear that doctrine does ***not*** apply here, because BEP and Dataworks were not in an employer-employee relationship, and because there was no written instrument between BEP and Dataworks indicating that the Custom Logs were "work[s] made for hire." *See* 17 U.S.C. § 101 (listing two bases upon which to find that the "work for hire" doctrine applies).

[8] When a piece of literature is purchased by a consumer, that does not mean the consumer then has the right to violate the author's copyright.

Thus, Commlog has not satisfied its burden on summary judgment of identifying a lack of evidence for Dataworks as to whether Dataworks owned the Custom Logs at issue. And even if Commlog has satisfied this burden, the evidence submitted by Dataworks has created a triable issue as to ownership of the Custom Logs.

**B.     Copyrightability of the Custom Logs**

Commlog also argues that the portions of the Custom Logs created by Dataworks are not copyrightable because they are mere "blank forms" (to be filled in by BEP managers) lacking originality and creativity. (ECF No. 91, at 12-15.) Dataworks disputes this, but also argues that, separate from the issue of the copyrightability of each distinct element of the Custom Logs, the Custom Logs are copyrightable as compilations. (ECF No. 110, at 17-21.)

The law is not settled as to "whether the question of copyrightability is a pure question of law and thus one for the court, or a mixed question of law and fact and thus one involving potential jury questions in the presence of materially disputed facts." *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 n.4 (10th Cir. 2008). The court in *Meshwerks* pointed out that the Tenth Circuit has not resolved the question, and the *Meshwerks* court declined to do so "as this case comes to us on summary judgment, and we cannot, of course, grant such a motion if we discern any material dispute of fact in the record before us." *Id.*[9]

The Court declines to make judicial determinations regarding the copyrightability

---

[9] *See also Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140 (2d Cir. 2010) ("The question of whether a work constitutes a 'compilation' for the purposes of statutory damages pursuant to Section 504(c)(1) of the Copyright Act is a mixed question of law and fact.").

of particular sections and particular pages of the Custom Logs, given the numerous factual disputes that exist regarding who owns the particular sections and particular pages of the Custom Logs. The Court will, however, make a judicial determination regarding the copyrightability of the Custom Logs as a whole, as compilations, because there are no factual disputes regarding the make-up of the Custom Logs as a whole (what the Custom Logs looked like as a whole). The Court concludes that the Custom Logs are copyrightable as compilations (as explained *infra*). However, there is still a genuine dispute of material fact regarding the extent to which Dataworks compiled the Custom Logs (as compared to BEP's involvement in creating the compilation). Therefore, the Court's legal determination regarding the Custom Logs' copyrightability will only assist the trier of fact in determining whether *Dataworks* was entitled to copyright them as the *sole* owner of the compilations.

17 U.S.C. § 101 defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." If a work meets this definition, it is copyrightable, even if the individual elements making up the compilation are not copyrightable in themselves. *See* 17 U.S.C. § 103; *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 356-59 (1991).

> [A] compilation is deemed original and hence protected by copyright if the author has independently and with at least a minimal degree of creativity made choices as to which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers.

*Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226,

1233 (D. Colo. 2009) (quotation marks omitted).

The Court finds that the required levels of originality and creativity have been met here as to the compilation of the Custom Logs. The selection, design, and placement of the calendars, daily logs, repair and maintenance logs, collective repairs lists, in-store manager's meeting logs, injury logs, and BEP policies and procedures within the Custom Logs are sufficiently original and creative to warrant copyright protection as compilations. This case is quite similar to *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989), which upheld the copyrightability as compilations of certain daily organizers, and *Baldwin Cooke Co. v. Keith Clark, Inc.*, 383 F. Supp. 650 (N.D. Ill. 1974), which held that the executive planners at issue were copyrightable as compilations. The Court follows these cases and holds that the Custom Logs are copyrightable as compilations.

However, as previously explained, a genuine dispute of material fact still exists as to whether Dataworks was entitled to copyright the Custom Logs as the sole owner of the compilations.

**C.      Whether the Copyright Registrations for the Custom Logs are Valid**

Commlog also argues that Dataworks' copyright registrations for the Custom Logs are invalid and should be cancelled because Dataworks deceived the United States Copyright Office in two ways in order to obtain the copyrights: (1) by failing to identify BEP as a co-author of the works, and (2) by deleting BEP's copyright symbols on particular pages and replacing them with Dataworks' copyright symbols. (ECF No. 91, at 15-17.) Dataworks argues in response that it did not mislead the Copyright Office, and even if the registrations are incorrect in some way, they can be corrected by

amended registrations. (ECF No. 110, at 22-24.) In its Reply, Commlog changes tacks, making the new argument that the copyright registrations are vague about what particular works are even being copyrighted. (ECF No. 114, at 7-9.)

As to Commlog's first argument, the Court has already held that there are genuine disputes of material fact as to who owns the Custom Logs, so the Court is not in a position to hold as a matter of law that Dataworks deceived the Copyright Office by failing to identify BEP as a co-author of the Custom Logs.

As to Commlog's second argument, Dataworks disputes whether it removed BEP copyright symbols from certain pages prior to submission of the Custom Logs to the Copyright Office. Regardless, the Court has already held that the Custom Logs are copyrightable as compilations, and that there is a genuine dispute of material fact as to whether Dataworks was entitled to copyright the Custom Logs as the sole owner of the compilations. If Dataworks was so entitled, then it would not necessarily have acted improperly by removing BEP's copyright symbols, given that Dataworks was simply copyrighting the Custom Logs as a whole as compilations. *See* 17 U.S.C. §§ 103(b), 201(c) (providing that a copyright in a compilation only provides ownership over that compilation, and not ownership over the individual parts of the compilation); *Greenberg v. Nat'l Geographic Soc'y*, 533 F.3d 1244, 1273 n. 29 (11th Cir. 2008) ("Under § 103(b), a copyright in a compilation does not extend to the compiler any exclusive rights in the preexisting materials brought together in the collective work."). If the trier of fact concludes that Dataworks was entitled to copyright the Custom Logs as compilations, and if it is found that Dataworks did remove BEP's copyright symbols on particular pages within the Custom Logs, it would not necessarily follow that Dataworks supplied

the Copyright Office with "false information" or "withheld [information from the Copyright Office] that may have resulted in rejection of the application." *See Martin v. Cuny*, 887 F. Supp. 1390, 1394 (D. Colo. 1995) (discussing bases to invalidate copyright registration).

Commlog's third argument – that it is not clear what versions of the Custom Logs were actually copyrighted[10] – was not raised until Commlog's Reply brief. The Court therefore may disregard this argument. *See Kerber v. Qwest Grp. Life Ins. Plan*, 727 F. Supp. 2d 1076, 1079 (D. Colo. 2010); *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1242 (D. Colo. 2010). However, even if the Court were to consider the argument, it would conclude that genuine disputes of material fact preclude summary judgment on this issue. The copyright registrations themselves list the titles of the Custom Logs as "The Manager's Red Book Third Quarter 2008 Black-eyed Pea" and "The Trainer's Log Book Third Quarter 2008 (Black-eyed Pea)." (*See* ECF No. 91, Exs. A-11, A-12.) Also, the copyrights were registered in December 2008. (*See id.*) These facts are consistent with Dataworks position that the works copyrighted were the third quarter 2008 versions of the Custom Logs. Commlog's argument appears to be based solely on the fact that the copyright registrations contain fields indicating that the "Year of Completion" and "Date of 1st Publication" for the Manager's Log and Trainer's Log are 1996 and 2007, respectively. (*See id.*) Based on this evidence on both sides, the Court concludes that genuine issues of material fact exist that preclude summary

---

[10] Commlog argues that the copyright registrations suggest that 1996 and 2007 versions of the Manager's Log and Trainer's Log, respectively, were copyrighted, not the third quarter 2008 versions advanced by Dataworks.

judgment for Commlog on this issue.

## IV.  CONCLUSION

In accordance with the foregoing, it is therefore ORDERED that:

(1)     Defendants' Motion for Partial Summary Judgment (ECF No. 91) is DENIED; and

(2)     Plaintiff's Unopposed Motion for Leave to File Sur-Reply (ECF No. 146) is DENIED as MOOT.

Dated this 13th day of July, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge